# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | CR 19-96-BLG-SPW |
| Plaintiff, | |
| vs. | ORDER |
| ROBERT ANTHONY HOUSE, | |
| Defendant. | |

Before the Court is Defendant Robert Anthony House's motion to suppress. (Doc. 20). The Court held a hearing on the motion on December 6, 2019. ATF Special Agents Phillip Swain and Ryan Young testified for the Government. For the following reasons, the Court grants the motion.

## I. Background

In spring 2019, the Billings Police Department responded to a 911 call concerning a citizen behaving erratically. BPD officers located and detained the citizen, later identified as Robert Anthony House, and transported him to a local hospital for treatment. Due to House's behavior, the hospital's security guard searched House and his backpack. In House's jacket, the security guard found a knife. In the backpack, the security guard found narcotics, drug paraphernalia, and a Taurus pistol. BPD officers took custody of the backpack and its contents and the matter was later referred to ATF Special Agent Philip Swain.

After receiving the case, Special Agent Swain inspected the backpack. He found no identifying information in or on the backpack, but he did find what looked like a silver house key. Special Agent Swain determined House lived with his mother over in East Helena, three hours away. Wondering if the silver house key could tie House to the backpack, Special Agent Swain FedExed it to Helena-based ATF Special Agent Ryan Young.

Special Agent Young received the key and drove out to the residence. The residence was in a rural area, down a long driveway. At the front of the driveway was a large swinging gate with signs that said "POSTED NO TRESPASSING" and "POSTED NO TRESPASSING KEEP OUT." On this day, the gate was open.

Special Agent Young drove down the driveway to the residence. The residence had a front deck and attached garage. There was a vehicle parked in front of the garage. Special Agent Young approached the front door, knocked, and asked "is anybody home?" When he received no answer, Special Agent Young tried to insert the silver key into the front door's two locks. It didn't fit either lock. Special Agent Young walked over to the attached garage and inserted the key into the garage's entry door lock. The key snugly turned the lock. Special Agent Young turned the door handle and opened the entry door a few inches to confirm the key had unlocked the door. He then closed the door and relocked it with the key.

House was indicted for being a prohibited person in possession of a firearm under 18 U.S.C. §§ 922(g). He filed this motion to suppress evidence that the silver key fit the attached garage's entry door.

## II. Discussion

The question before the Court is whether the insertion of a key into an attached garage's lock by a federal agent is a search requiring a search warrant or warrant exception. The Court holds that it is.

In *United States v. Jones*, the Supreme Court supplemented the traditional *Katz* test for a search by formulating what it called a "physical intrusion" test. Under *United States v. Katz*, a search occurs when the government invades a place in which a person has an expectation of privacy and society is willing to recognize the person's expectation as reasonable. 389 U.S. 347, 361 (1967) (Harlan, J., concurring). For over 40 years, the *Katz* test determined whether government conduct was a search. But the *Katz* test proved an awkward fit for the government's conduct in *Jones*.

In *Jones*, the government mounted a GPS tracker on a citizen's car and argued under *Katz* it had not committed a search because the citizen had no reasonable expectation of privacy in his whereabouts on public roads. 565 U.S. 400, 406 (2012). The Supreme Court agreed the government's conduct was not a search under *Katz* but explained the Fourth Amendment also shielded citizens from government trespass into houses, papers, and effects. 565 U.S. at 406-407. Because placing a GPS tracker on a car to obtain information was the sort of

physical intrusion common law would have recognized as a government trespass, and because a car was an "effect," the government had searched the car by placing a GPS tracker on it. 565 U.S. at 404-411.

The Supreme Court elaborated on the *Jones* physical intrusion test in *Florida v. Jardines*. In *Jardines*, the police walked up to a citizen's front door with a trained narcotics dog. The dog sniffed the base of the front door and indicated to the officers that narcotics were present behind the door. 569 U.S. 1, 4 (2013). Building on *Jones*, the Supreme Court held the police had committed a search because they physically intruded into a protected area—the home and its curtilage—to gather information, and had exceeded any implied permission the homeowner may have given to the public to approach the home and knock when they used a narcotics dog to sniff the door. 569 U.S. at 10-11.

*Jones* and *Jardines* were limited to whether the government conduct was a search; neither answered whether the search at issue was reasonable. Five years after *Jardines*, however, the Supreme Court held a warrantless physical intrusion into the home or its curtilage is presumptively unreasonable. *Collins v. Virginia*, 128 S.Ct. 1663, 1670 (2018).

The First Circuit had the opportunity to apply the *Jones* physical intrusion test to the act of inserting a key into a lock in *United States v. Bain*. In *Bain*, federal agents inserted keys seized from a citizen into an apartment's front door lock. 874 F.3d 1, 9-11 (1st Cir. 2017). Applying *Jones* and *Jardines*, the First Circuit held the agents' conduct was a search because the front door lock was

within the curtilage of the home and the agents had exceeded any implied permission the homeowner may have given to the public to approach the home and knock when they inserted a key into the lock. 874 F.3d at 15.

The Court agrees with the First Circuit that *Jones* and *Jardines* compel the conclusion that the insertion of a key into an attached garage's lock by a federal agent is a search requiring a search warrant or warrant exception. There is little disagreement an attached garage is within the curtilage of the home, entitling it to the Fourth Amendment's highest protection. *See Collins*, 138 S.Ct. at 1670; *see also United States v. Gorman*, 104 F.3d 272, 274 (9th Cir. 1996). Likewise, there is little disagreement the act of inserting a key into a home's lock exceeds the public's implied license to approach someone's front door and knock. As the Supreme Court reasoned in *Jardines*, "[t]o find a visitor knocking on the door," is normal but "to spot that same visitor exploring the front path with a metal detector," is not. 569 U.S. at 9. There is nothing routine or normal about a stranger inserting a key into a home's lock. The government's conduct here was therefore a search of House's home and, because it was done without a warrant, is presumptively unreasonable absent a warrant exception. *Collins*, 128 S.Ct. at 1670.

Although the Ninth Circuit has not had the opportunity to apply the *Jones* physical intrusion test to the act of inserting a key into an attached garage's lock, its opinion in *United States v. Lundin* indicates it would agree with the First Circuit's opinion in *Bain*. In *Lundin*, police officers with probable cause to arrest a

suspect visited the suspect's home at 4:00 a.m., stood on the porch, and knocked on the door. 817 F.3d 1151, 1158-1159 (9th Cir. 2016). The Ninth Circuit held the police officers committed a search under *Jones* and *Jardines* when they knocked on the door because the front porch was part of the home's curtilage and they had exceeded any implied permission the homeowner may have given to the public to approach the home and knock when they did so at 4:00 a.m. and for the purpose to arrest the suspect, not simply talk. *Lundin*, 817 F.3d at 1159.

Similar to the First Circuit, the Ninth Circuit emphasized that the reason the police conduct was a search was because the police did what homeowners ordinarily do not permit the public to do. *Lundin*, 817 F.3d at 1159. People do not usually welcome unannounced visitors in the middle of the night absent exigent circumstances. *Lundin*, 817 F.3d at 1159. If the police simply knocking on a front door at 4:00 a.m. is a search, the police inserting a key into a home's lock must be also.

The government argues the search was reasonable under a "minimally intrusive" exception to the warrant requirement, citing several cases for support. The Court disagrees the government's cases establish a "minimally intrusive" exception to the warrant requirement.

First, all but one of the cases cited by the government were decided pre-*Jones*, making their precedential value suspect. For instance, several of the cases held the act of inserting a key into a lock was not even a search, which is incongruous with the post-*Jones* era. *United States v. DeBardeleben*, 740 F.2d

440, 444-445 (6th Cir. 1984) (holding insertion of key into car lock was not a search); *United States v. Lyons*, 898 F.2d 210, 212 (1st Cir. 1990) (insertion of key into storage locker was not a search); *United States v. Salgado*, 250 F.3d 438, 456-457 (6th Cir. 2001) (insertion of key into apartment door lock was not a search); *United States v. Moses*, 540 F.3d 263, 272 (4th Cir. 2008) (insertion of key into apartment door lock was not a search).

Second, three of the cases involve the insertion of keys into "effects," not homes. *DeBardeleben*, 740 F.2d at 444-445 (car); *United States v. $109,179 in U.S. Currency*, 228 F.3d 1080, 1088 (9th Cir. 2000) (car); *Lyons*, 898 F.2d at 212 (storage locker). People are entitled to less privacy in their "effects" than their homes, which means cases dealing with "effects" establish at best the minimum level of protection, rather than the maximum, for cases dealing with homes. *Arizona v. Gant*, 556 U.S. 332, 345 (2009).

That leaves the two Seventh Circuit cases cited by the government. In *United States v. Concepcion*, a pre-*Jones* case, the Seventh Circuit held the insertion of a key into an apartment door's lock was a search, but a citizen's privacy interest in the lock was so small that the police did not need a warrant or even probable cause to search it. 942 F.2d 1170, 1172-1173 (7th Cir. 1991). In *United States v. Thompson*, a post-*Jones* case, the Seventh Circuit affirmed its holding in *Concepcion*. 842 F.3d 1002, 1008 (7th Cir. 2016).

*Concepcion* and *Thompson* are unpersuasive that the Supreme Court would recognize a "minimally intrusive" exception in this case. Glaringly, *Thompson*

does not even discuss *Jones* or *Jardines*. *Thompson* simply reiterates the holding of *Concepcion*, affirms it, and moves on to another issue. And *Concepcion*'s holding conflicts with *Jones* and *Jardines*. In plain terms, the Seventh Circuit reasoned that because the information the police sought by inserting the key into the lock—which was whether the citizen lived in the apartment—was easily attainable by other means, the expectation of privacy was minimal, negating the need for a warrant or probable cause. *Concepcion*, 942 F.2d at 1173.

It's unlikely the Supreme Court would agree the insertion of a key into a home's lock is a "minimal intrusion" that can be done without a warrant or probable cause in light of its statement that the Fourth Amendment "would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity." *Jardines*, 569 U.S. at 6. Here, Agent Young inserted a key into three different locks on two different doors. While that might not be the epitome of "trawling for evidence with impunity," it is nonetheless an uninvited physical intrusion of the home for the purpose of obtaining information, which is close enough.

It's also unlikely the Supreme Court would agree that because the information sought is readily available by other means, no warrant is needed. That reasoning is at odds with what normally constitutes exigent circumstances justifying warrantless intrusions. For instance, the destruction of evidence is considered an exigent circumstance justifying a warrantless search. *Illinois v. McArthur*, 531 U.S. 326, 331 (2001). So, too, is a credible threat of immediate

danger. *McArthur*, 531 U.S. at 331. Contrary to the Seventh Circuit's reasoning, it's therefore less justifiable to conduct a warrantless search to obtain information when the information is readily available by other means.

The Court holds the "minimal intrusion" exception argued by the government does not justify the search in this case. Because the government committed a warrantless search and no recognized warrant exception is present, the evidence must be suppressed.

### III. Conclusion and order

House's motion to suppress (Doc. 20) is granted.

DATED this 16th day of December, 2019.

SUSAN P. WATTERS
United States District Judge